Filed 10/23/24  P. v. Banuelos CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051445 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. 22CR02861) |
| v. | |
| ANNE MARIE BANUELOS, | |
| Defendant and Appellant. | |

Appellant Anne Marie Banuelos[1] was charged with three counts of assault with a deadly weapon, a knife (Pen. Code,[2] § 245, subd. (a)(1)) after stabbing three people, including two juveniles.  After the trial court denied her motion for mental health diversion (§ 1001.36) on the basis that she presented an unreasonable risk of danger to public safety if treated in the community, she pleaded guilty to one count of assault with a deadly weapon (§ 245, subd. (a)(1)) and was placed on probation.

---

[1] We refer to appellant using her last name as it appears in her briefing in this court and in her notice of appeal.  Banuelos is also referred to as Anne Marie Cheney in some documents in the record.

[2] All further unspecified statutory references are to the Penal Code.

On appeal, Banuelos contends that the trial court abused its discretion in denying her motion for mental health diversion because the record does not support the court's finding that she presented an unreasonable risk of danger to public safety.

For the reasons stated below, we affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

A. *Facts and Charges*

On July 10, 2022, about 1:00 a.m., Officer Salvador Luna of the Santa Cruz Police Department responded to a report of vandalism on Broadway in Santa Cruz. The caller reported Banuelos was throwing things at the caller's residence. While responding to the reported vandalism, Officer Luna heard yelling coming from the vicinity of a convenience store nearby on Ocean Street and reported it over the radio.

When Officer Luna and other officers arrived at the convenience store, Craig B. approached Officer Luna and stated Banuelos had stabbed his sister (Mariah T.), his stepfather (Michael Y.), and his girlfriend (Kayley G.).[4] Craig, Mariah, and Kayley were juveniles at the time of the incident.

While the group was walking to the convenience store, they saw Banuelos hitting a sign in front of a hotel on Broadway. Members of the group laughed at her. In response, Banuelos followed the group to the convenience store and began to argue with them. Michael attempted to deescalate the situation, but Banuelos lunged at and stabbed Kayley in the back, causing an approximately one-inch wound. While Craig pulled Kayley away, Banuelos continued swinging the knife towards the group. Mariah tried to intervene, and Banuelos cut Mariah's right hand and then swung the knife towards Mariah's stomach, which cut Mariah's sweater but did not injure Mariah. Michael

---

[3] These facts are drawn from the transcript of the preliminary hearing. The parties stipulated to the facts as set forth in the preliminary hearing.

[4] To protect the victims' and their relatives' privacy, we refer to them by their full first names and last name initials and, subsequently, by their first names only. (Cal. Rules of Court, rule 8.90(b)(4), (10).)

attempted to stop Banuelos's attack by pushing her away. Banuelos stabbed him twice, once in his right forearm and once in his left tricep.

On November 21, 2022, Banuelos was charged by information with three counts of felony assault with a deadly weapon (§ 245, subd. (a)(1)).

B. *Psychological Evaluation*

Dr. Carolyn Murphy, a clinical psychologist, conducted a psychological evaluation of Banuelos and reviewed Santa Cruz Police Department reports of the July 10, 2022 incident, as well as Banuelos's criminal history and behavioral health, hospital, and jail mental health records.[5] Dr. Murphy diagnosed Banuelos with bipolar II disorder, severe alcohol use disorder, moderate cannabis use disorder, and severe opioid use disorder.

In her report, Dr. Murphy noted that Banuelos "has a significant history of substance use that includes abuse of alcohol, cannabis, heroin, and prior use of methamphetamine, cocaine, KJ, LSD, huffing paint and glue, PCP, and mushrooms." She stated that Banuelos reported experiencing childhood trauma stemming from parental separation, witnessing domestic violence, physical and sexual abuse, and familial substance abuse, mental health issues, and criminality, which led to Banuelos developing "significant substance abuse issues." Banuelos also reported to Dr. Murphy that she "has significant struggles with alcohol, and will drink until the middle of the month (when her money runs out), and then she has to sell things for money."

In discussing the July 10, 2022 incident, Dr. Murphy stated that Banuelos had "again relapsed and/or stopped her medication such that she decompensated and behaved

---

[5] Banuelos's prior criminal record consisted of the following offenses: (1) a conviction in April 1991 of two counts of receipt of stolen property (§ 496), for which she was sentenced to one year of probation and 91 days in jail; (2) a conviction in August 1992 for petty theft (§§ 484, 488), for which she was sentenced to two years of probation and nine days in jail; and (3) a conviction in January 2000 of spousal battery (§ 243, subd. (e)(1)), for which she was sentenced to three years of probation. On April 30, 2002, probation was terminated unsuccessfully and Banuelos was ordered to serve one year in jail.

3

in an extremely aggressive manner" and that her "state of decompensation [] was heavily influenced by the disinhibiting effects of alcohol." Dr. Murphy noted that, while Banuelos "recognizes her substance abuse issues," she "stops her medication so that she can drink" and "admitted that this was most recently the case."

Dr. Murphy observed that Banuelos "does not present with violent attitudes or beliefs except when intoxicated (per a review of mental health records that show that pattern)," and that "Banuelos can behave erratically when intoxicated and emotionally triggered, as seen [during the July 10, 2022 incident], but this appears to be the first time she has been arrested for violent conduct. She is not seemingly violent by nature, but is one who suffers from severe mental health difficulty and concurrent substance abuse instead." She concluded that Banuelos "appears to be in the moderate to moderate-high range for risk for violence" (italics omitted) and she "does not appear to be at imminent, significant risk for violence, and once involved in treatment that specifically targets her coping skills, mental illness, and addiction issues, her risk should in fact be reduced over time."

Dr. Murphy added a caveat to her conclusion regarding Banuelos's risk for violence: "Medication compliance and abstinence will need to be assured, however." She noted that Banuelos has struggled with treatment compliance and "has not been managing her mental health or her substance abuse concerns well in the community." Dr. Murphy's report indicated that Banuelos had undergone rehabilitation programs at Janus (approximately 10 times, according to Banuelos), lived in a sober living environment (SLE), and attended a program at The Camp Recovery Center. Dr. Murphy concluded that any treatment program would need to be "intensive" and recommended, among other aspects of her treatment, stable housing, appointments, a tracking plan, regular communications with doctors, and compliance training, in light of Banuelos's difficulties managing her symptoms in the community.

4

C. *Procedural Background*

On February 7, 2023, Banuelos filed a request for mental health diversion pursuant to section 1001.36, to which she attached the psychological evaluation by Dr. Murphy.

Banuelos argued that, based on Dr. Murphy's evaluation, she met the requirements for mental health diversion: she had been diagnosed with qualifying conditions, namely bipolar II disorder, alcohol use disorder, cannabis use disorder, and opioid use disorder; her mental health diagnoses were a significant factor in the charged offense; and she did not pose an unreasonable risk of danger to public safety. With respect to the last requirement, Banuelos cited her nonviolent criminal history (consisting primarily of theft and drug arrests), her cooperation with law enforcement officers, and Dr. Murphy's opinion that Banuelos "does not present with violent attitudes or beliefs except when intoxicated," as grounds to conclude that Banuelos would not pose an unreasonable risk of danger to public safety if granted mental health diversion.

In opposition, the District Attorney conceded that Banuelos met the qualifying factors for mental health diversion. However, he opposed diversion "on the grounds it would pose an unreasonable risk of danger to public safety." The District Attorney argued that Banuelos "violently assaulted three individuals (two of them juveniles)" "[w]ithout any physical provocation," and maintained that "the potential for greater bodily harm, or death," including the super strike of attempted homicide, "was entirely possible based on" Banuelos's actions. He further argued that the trial court should be "wary of [Banuelos]'s ability to abstain from the use of alcohol or controlled substances while on pretrial diversion" in light of her repeated participation in rehabilitation programs and time at an SLE: "Defendant is asking the court to believe that despite all these failed, previous attempts at intervention, this situation will be different. This is coupled with the risk that if [Banuelos] is unable to abstain from the use of alcohol, or fails to follow her medication regimen, the nature in which she acts out is incredibly violent and aggressive."

5

In reply, Banuelos argued that her charged offense was not a " 'super strike' " and that Dr. Murphy's evaluation "did not at all indicate anywhere" that Banuelos was at risk for committing murder "if she did not take her medication and avoid substance use." She also relied on Dr. Murphy's opinion that Banuelos "is 'not seemingly violent by nature' " and her lack of history of violence prior to the July 10, 2022 incident to bolster her contention that there is "[n]o evidence" that she "would commit the crime of murder if she were to fail to follow her mental health diversion treatment plan."

On March 15, 2023, the trial court held a mental health diversion determination hearing. During the hearing, Banuelos reiterated the arguments in her request for mental health diversion and her reply and testified that she's not a violent person by nature, had blacked out due to an escalation in her alcohol consumption, and "didn't come from violent people." She testified that, in the past, she chose not to accept offered help because she was drinking and felt ashamed, but that she was willing to cooperate with a treatment plan, including taking medication to help her abstain from alcohol.

On March 22, 2023, the trial court denied mental health diversion on the ground that Banuelos posed an unreasonable risk of danger to public safety. The trial court acknowledged Banuelos had had a difficult life, and experienced challenges "both because of her mental health and also her addiction." However, the trial court expressed concern over Banuelos's "significant history of substance use" and the "quite extensive" range of substances used, Banuelos's prior struggles with treatment and lack of success in a variety of treatment programs, the "violent" and "traumatic" nature of the offense, and the fact that "using a knife, stabbing someone in the back" could have resulted in homicide. The court distinguished the instant case from *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*)—a case on which Banuelos relied in her moving papers—in which the defendant fired a shot in the air, away from the victims. The court stated, "This was actual impact, personal contact with a knife on another person. And actually three people. . . . [T]his is so serious, I don't think it needs to rise to the mass public

6

event of [*People v. Pacheco* (2022) 75 Cal.App.5th 207] for us to be really concerned." The court suggested that working with the Behavioral Health Court[6] would be more helpful to Banuelos than mental health diversion because it believed Banuelos "would do well being directly case managed and having a clinician assist her" and that the Behavioral Health Court could provide "really good support" and community, "especially for the women that feel all alone in their addictions and their mental health."

On April 21, 2023, county behavioral health assessed Banuelos, and she agreed to engage in mental health services and treatment. The trial court made Banuelos releasable for placement in the treatment program under the supervision of county behavioral health and subject to certain conditions, including prohibitions against owning or possessing any firearm, ammunition, and/or any other dangerous weapon; prohibitions against possessing controlled substances (without a prescription), drug paraphernalia, alcohol, and marijuana; submission to controlled substances and alcohol testing; and compliance with prescribed medication.

On August 2, 2023, Banuelos pleaded guilty to one count of assault with a deadly weapon (§ 245, subd. (a)(1)). On September 15, 2023, the trial court sentenced Banuelos to a stipulated sentence of two years of formal probation, subject to certain conditions, including taking any and all medications prescribed by medical professionals, compliance with county mental health directives, abstention from nonprescribed substances and alcohol, and completion of the treatment program at Casa Pacific. The District Attorney

---

[6] The Behavioral Health Court in Santa Cruz County uses a "collaborative team-based approach" in which "[t]he [j]udge, [p]robation, [b]ehavioral [h]ealth staff, District Attorney, [d]efense [c]ounsel, and service providers all work together" during the participant's involvement in the program "to ensure that [the participant] receive[s] the support and services [] need[ed] to accomplish [the participant's] goals and stay on track." (Super. Ct. Santa Cruz County, Collaborative Court's Office, Behavioral Health Court Information Sheet, <https://www.santacruz.courts.ca.gov/system/files/supcr-1137-behavioral-health-court-information-sheet_1.pdf> [as of Oct. 22, 2024], archived at: [https://perma.cc/C5GZ-CLMD].)

requested the trial court also issue stay away orders that require Banuelos to stay away from the three victims as part of the conditions of her probation. Banuelos agreed to the probation terms.

Banuelos timely filed a notice of appeal of the trial court's denial of her mental health diversion request. The trial court granted Banuelos's request for a certificate of probable cause.

## II. DISCUSSION

On appeal, Banuelos contends that the trial court abused its discretion in denying her request for mental health diversion by relying on factual findings—namely, that Banuelos poses an unreasonable risk of danger to public safety—not supported by substantial evidence.[7] She argues that she does not pose an unreasonable risk of danger to public safety because (1) while her charged offenses are " 'serious' felonies," they are not " 'super strikes' "; (2) she has "no past violent prior arrests or convictions"; and (3) Dr. Murphy's psychological evaluation indicated Banuelos was " 'not seemingly violent by nature.' "[8]

_____

[7] The parties do not appear to contest Banuelos's eligibility or suitability for mental health diversion under the other factors set forth in section 1001.36, subdivisions (b) and (c), respectively.

[8] In her reply brief, Banuelos raises two arguments for the first time. She argues that " '[i]t is logically inconsistent to deny mental health diversion on the ground that [defendant] was likely to commit a super-strike offense, while simultaneously finding [she] was not likely to inflict great bodily injury on persons in the community' " and grant probation on those grounds. (Quoting *People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*).) She further argues that the trial court should have considered "the underlying purposes of the [mental health diversion] statute and explain why diversion would not meet those goals." (Quoting *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 893.)

Banuelos did not make these arguments either before the trial court or in her opening brief on appeal. Arguments not presented in the trial court are forfeited on appeal. (*People v. Oneal* (2021) 64 Cal.App.5th 581, 592, fn. 6 (*Oneal*).) Additionally, they are " 'untimely because [they are] asserted for the first time in the reply brief.' " (*Ibid.*; see also *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["[W]e do not

8

A. *Applicable Law*

"Section 1001.36 creates a 'pretrial diversion' program for certain defendants who suffer from a diagnosed and qualifying mental disorder." (*People v. Weaver* (2019) 36 Cal.App.5th 1103, 1114.) "The statute defines ' "pretrial diversion" ' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment,' subject to multiple restrictions." (*Id*. at p. 1115; see also *People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*).)

The stated purpose of mental health diversion "is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders." (§ 1001.35; see also *Frahs*, *supra*, 9 Cal.5th at p. 626.)

A trial court "may, in its discretion," grant pretrial mental health diversion to a defendant charged with the commission of a misdemeanor or felony (excluding certain offenses not at issue here) if the defendant satisfies the eligibility requirements and the court determines that diversion is suitable after considering certain factors. (§ 1001.36, subd. (a); *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1079 (*Gerson*).)

---

consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier. [Citations.] This rule is based on considerations of fairness—withholding a point until the closing brief deprives the opposing party of the opportunity to file a written response unless supplemental briefing is ordered."].) Therefore, we do not consider these arguments from Banuelos's reply brief.

9

The only factor at issue in this appeal is whether Banuelos is "suitable" for pretrial diversion because she "will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community." (§ 1001.36, subd. (c)(4).)

Section 1170.18 defines " 'unreasonable risk of danger to public safety' " as "an unreasonable risk that the petitioner will commit a new violent felony" within the meaning of section 667, subdivision (e)(2)(C)(iv). (*Id.*, subd. (c).) That provision of section 667 sets forth eight categories of offenses that are colloquially referred to as "super strikes," including "[a]ny homicide offense, including any attempted homicide offense, defined in [s]ections 187 to 191.5, inclusive." (§ 667, subd. (e)(2)(C)(iv)(IV); *Moine*, *supra*, 62 Cal.App.5th at p. 449 [noting that the " ' "super strikes" ' " include murder and attempted murder].)

When ascertaining whether the defendant will pose an unreasonable risk of danger to public safety, "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4); *Moine*, *supra*, 62 Cal.App.5th at p. 450.)

" 'Ultimately, however, diversion under section 1001.36 is discretionary, not mandatory, even if all the [statutory] requirements are met.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 887 (*Qualkinbush*); see also *Whitmill*, *supra*, 86 Cal.App.5th at p. 1147; *Oneal*, *supra*, 64 Cal.App.5th at p. 588.)

B. *Standard of Review*

We review a trial court's ruling on a motion for mental health diversion for abuse of discretion. (*Qualkinbush*, *supra*, 79 Cal.App.5th at p. 887; *Whitmill*, *supra*, 86 Cal.App.5th at p. 1147; *People v. Pacheco*, *supra*, 75 Cal.App.5th 207, 213 (*Pacheco*).) We likewise review a trial court's determination of dangerousness for "abuse of discretion, given that the court is statutorily required to determine dangerousness 'in its

10

discretion.' " (*People v. Jefferson* (2016) 1 Cal.App.5th 235, 242 (*Jefferson*), quoting § 1170.18, subd. (b); *Oneal*, *supra*, 64 Cal.App.5th at p. 589.)

" 'A court abuses its discretion when it makes an arbitrary or capricious decision' " (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1147) that "exceeds the bounds of reason" (*Pacheco*, *supra*, 75 Cal.App.5th at p. 213; *Oneal*, *supra*, 64 Cal.App.5th at p. 588), " 'appl[ies] the wrong legal standard [citation], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Whitmill*, at p. 1147.)

" 'Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion "must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]" ' [Citation.] The abuse of discretion standard 'involves abundant deference' to the court's ruling." (*Jefferson*, *supra*, 1 Cal.App.5th at pp. 242–243.) " 'It is appellant's burden on appeal to establish an abuse of discretion and prejudice.' " (*Pacheco*, *supra*, 75 Cal.App.5th at p. 213.)

We review a trial court's factual findings for substantial evidence (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1147) and "[w]e will uphold the trial court's factual findings if supported by substantial evidence." (*Oneal*, *supra*, 64 Cal.App.5th at p. 589.)

" 'On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*Gerson*, *supra*, 80 Cal.App.5th at p. 1079.)

C. *Analysis*

Banuelos contends that she does not pose an unreasonable risk of danger to public safety, and the trial court abused its discretion in denying mental health diversion on that basis because substantial evidence did not support such a factual finding. Banuelos argues that, unlike the defendants in *People v. Hall* (2016) 247 Cal.App.4th 1255 and *Jefferson*, who had lengthy criminal records replete with violent felony convictions, her criminal history prior to the present incident does not include any arrests or convictions for violent offenses.

We are not persuaded that Banuelos's past lack of violent conduct is dispositive of her risk of future dangerousness. Under section 1001.36, "[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (*Id.*, subd. (c)(4).) We take into consideration multiple factors, including "the totality of appellant's behavior and criminal history" (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1153), which encompasses "the current charged offense[s]" (§ 1001.36, subd. (c)(4); *Moine*, *supra*, 62 Cal.App.5th at p. 450), when considering the likelihood that Banuelos could commit a super strike offense in the future.

Banuelos's present offenses, namely three counts of assault with a deadly weapon (a knife), do not themselves qualify as super strikes under section 667, subdivision (e)(2)(C)(iv). Nevertheless, they are serious felonies. Banuelos does not dispute the trial court's description of her attack on the victims as "very, very sudden, very surprising, violent [], and traumatic" or the court's observation that "using a knife, stabbing someone in the back" "could have been a homicide situation for sure." The record indicates that Banuelos stabbed the first victim, a minor, in the back, and then stabbed two others, one a minor, when they tried to intervene. This conduct constitutes substantial evidence supporting the trial court's finding that Banuelos posed an unreasonable risk of danger to

public safety on the basis of the present offenses.  In addition, Banuelos was previously convicted of spousal battery (§ 243, subd. (e)(1)).

We acknowledge Dr. Murphy's conclusions regarding Banuelos's propensity for violence but observe that Dr. Murphy nevertheless rated Banuelos's risk for violence as being in the "moderate to moderate-high range."  (Italics omitted.)  Dr. Murphy's evaluation stated that, on the night of the incident in question, Banuelos's decompensation "was heavily influenced by the disinhibiting effects of alcohol" and led to Banuelos "behav[ing] in an extremely aggressive manner."  Dr. Murphy later reiterated that Banuelos "does not present with violent attitudes or beliefs *except when intoxicated* (per a review of mental health records that show that *pattern*)" and that "Banuelos can behave erratically when intoxicated and emotionally triggered."  (Italics added.)

In addition, Dr. Murphy stated that her conclusions regarding the level of risk Banuelos poses to public safety were subject to Banuelos's compliance with treatment programs, and she expressed concern about Banuelos's ability to adhere to and complete such programs.  Dr. Murphy noted Banuelos's self-reported struggles with treatment compliance—referring to Banuelos's treatment at Janus (approximately 10 times), stint at an SLE, and participation in a program at The Camp—and "significant struggles with alcohol," which lead Banuelos to drink until she runs out of money and to "stop[] her medication so that she can drink."[9]  Dr. Murphy observed that Banuelos has struggled with treatment compliance and has not "manag[ed] her mental health or her substance

---

[9] In addition, Banuelos's probation report noted her past mixed performance on probation.  It stated that, although Banuelos kept in contact with her probation officer and participated in rehabilitative services while supervised, "she struggled through her time on probation with substance use and behavioral health issues" and was hospitalized at least once pursuant to Welfare and Institutions Code section 5150.  That statute provides in pertinent part that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to themselves, or gravely disabled," they may be taken into custody "for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment."  (Welf. & Inst. Code, § 5150, subd. (a).)

13

abuse concerns well in the community." As a result, she recommended an "intensive" treatment program involving greater oversight, accountability mechanisms, and education to help Banuelos manage her symptoms.

Given Banuelos's pattern of "extremely aggressive," "erratic," and "violent" behavior when under the influence of alcohol—including during the July 10, 2022 incident—coupled with her difficulties with treatment compliance and admitted "significant struggles with alcohol," the trial court concluded that "the public can't be assured that [Banuelos] can be successful in the treatment in order to be able to think clear enough to not pose this level of risk." As a result, the court determined that Banuelos would pose an unreasonable risk of danger to public safety if treated in the community.

We perceive no error in that finding based on the substantial evidence in the record supporting it. That evidence includes Dr. Murphy's evaluation of Banuelos (including her discussion of Banuelos's struggles with treatment compliance), Banuelos's criminal record, the circumstances and nature of the current charged offenses, and information contained in Banuelos's probation report describing her past lack of compliance with conditions of probation.

We conclude the trial court did not abuse its discretion in denying Banuelos's request for mental health diversion.

### III. DISPOSITION

The judgment is affirmed.

_____
                     Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Wilson, J.

**H051445**
*People v. Banuelos*